**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| VANDENBERG & SONS FURNITURE, INC. a Michigan corporation, individually and as the representative of a class of similarly-situated persons,<br><br>                    Plaintiff,<br><br>          v.<br><br>ALLIANCE FUNDING GROUP and JOHN DOES 1-10,<br><br>                    Defendants. | Civil Action No:  1:15-cv-01255<br><br>Hon. Gordon J. Quist<br><br>Magistrate Judge Ray Kent |

**PLAINTIFF'S MOTION TO COMPEL WITH INCORPORATED MEMORANDUM**

Plaintiff, Vandenberg & Sons Furniture, Inc., ("Plaintiff"), through its attorneys, submits its Motion (with Incorporated Memorandum) to Compel discovery from Defendant Alliance Funding Group ("Defendant") pursuant to Federal Rule of Civil Procedure 37 and Local Rule 7.1.  In accordance with Rule 7.1, Plaintiff unsuccessfully attempted to resolve this issue with Defendant.  Attached as Exhibit 1 is the Declaration of Ross M. Good ("Good Decl."), which details these efforts.

**Background**

Plaintiff's Complaint, filed on December 3, 2015, alleges Defendant has a practice of sending "unsolicited advertisements" by fax in violation of the Telephone Consumer Protection Act of 1991 ("TCPA"), and the Junk Fax Prevention Act of 2005 ("JFPA"), 47 U.S.C. § 227, *et seq*. (Doc. 1, ¶ 2). The Complaint alleges Defendant sent fax advertisements to Plaintiff and a class of similarly situated persons, "including, but not limited to, the facsimile transmissions of an unsolicited advertisement on or about March 19, 2012," which Plaintiff attached as Exhibit A. (*Id.*)

The Complaint alleges that the March 19, 2012 fax (the "Fax") is an "unsolicited advertisement" under the TCPA, and that the fax lacks the opt-out notice required by the regulations implementing the TCPA promulgated by the Federal Communications Commission ("FCC"), 47 C.F.R. § 64.1200(a)(4)(iii)–(iv), which precludes Defendant from asserting a defense of established business relationship (EBR). (*Id.* at ¶¶ 11, 13, 14, 16, 27-28, 30).

The Complaint unequivocally puts Defendant on notice that Plaintiff is not restricting the scope of the challenged misconduct to the Fax, alleging on information and belief that Defendant has "during the period preceding four years of the filing of this Complaint and repeatedly thereafter," sent fax advertisements to Plaintiff and the members of the proposed class, and in so doing violated the TCPA.  (*Id.* ¶ 30).

In sum, Plaintiff has identified the Fax that was sent to it, has alleged Defendant has a practice sending fax advertisements, has alleged Defendant sent other faxes in addition to the Fax received by Plaintiff in accordance with that practice, and has alleged a four-year class regarding Defendant's practice of sending fax advertisements.

On February 2, 2016, Plaintiff served Defendant with its first set of interrogatories and requests to produce. Plaintiff's discovery seeks, *inter alia*, all fax advertisements sent by or on behalf of Defendant during the "Relevant Time Period," (*i.e.*, the four-year period prior to the filing of this Complaint), and all documents related thereto, including the fax advertisements sent, transmission logs, lists to whom the fax advertisements were transmitted, exception reports, email correspondence, and all agreements and charges regarding said fax advertising. Defendant submitted its answers to both interrogatories and requests to produce on April 6, 2016, and supplemental answers on July 20, 2016.  Defendant makes clear in its answers to the

interrogatories and requests to produce and in subsequent deposition testimony that it is not interested in providing answers or looking for responsive documents.

For example, **Interrogatory No. 2** asks Defendant to "Identify, by date(s) sent and subject matter, all documents (including but not limited to the two faxes attached to Plaintiff's Complaint as Exhibit "A") sent by facsimile transmission during the Relevant Time Period that either (a) were used for any advertising or promotional purpose; or (b) which advertised any property, goods, or services, and describe in detail the content of each different document sent by fax and the date(s) when each different document was sent." In response, Defendant states:

> **Answer:** Defendant objects to this request on the grounds that it is unduly burdensome, overly broad, not reasonably limited in scope, and seeks documents and information not relevant to any party's claim or defense or proportional to the needs of this case. Defendant knows of no business method by which Defendant can ascertain "all documents that were sent by facsimile transmission during the Relevant Period." Additionally, the factual circumstances surrounding each and every transmission vary.

In **Request No. 1**, Plaintiff asked Defendant to produce: "Each different form of any document that promotes, advertises, announces, or describes the commercial availability of, or quality of, any property, goods, or services of Defendant which was sent by facsimile during the Relevant Time Period." In response, Defendant states:

> **Response:** Defendant objects to this request on the grounds that it is unduly burdensome, is overly broad, is not reasonably limited in scope, seeks documents and information not relevant to any party's claim or defense, and is not proportional to the needs of this case. Defendant knows of no business method by which Defendant can ascertain "all documents that were sent by facsimile transmission during the Relevant Period." Additionally, the factual circumstances surrounding each and every transmission vary.

And in Request No. 23, Plaintiff requested Defendant to "Produce a mirror image of each hard drive, backup server, or any devise used to send facsimile transmissions during the Relevant Time Period of any document referred to in Request No. 1." In response, Defendant made a

panoply of objections, and concluded that "defendant has not located any documents regarding Plaintiff or the number at issue."

Based on the headers on the two pages of the Fax, Plaintiff was able to determine that it was transmitted by Westfax, Inc. ("Westfax"), a third-party fax broadcaster. (Good Decl. ¶4). Accordingly, on February 15, 2016, Plaintiff issued a subpoena to Westfax regarding the Fax. In response, Westfax produced invoices paid by Defendant as well as Defendant's opt-out list. Westfax also submitted the declaration of Barry Clark ("Clark"), the President of Westfax. A copy of Clark's declaration is attached as Exhibit 2. In his declaration, Clark testified that Westfax did not retain detailed transmission records of Defendant. *Id.* However, Clark did testify that Defendant requested detailed transmission records be emailed by Westfax upon completion of each broadcast, and that these records were emailed to mvartolomei@alliancefunds.com and npatel@alliancefunds.com. *Id.*

Plaintiff also took the depositions of three employees of Defendant. On June 20, 2017, Plaintiff took the deposition of Defendant's 30(b)(6) witness, Shawn Donohue ("Donohue"). Donohue's deposition transcript is attached as Exhibit 3. When asked if he conducted a search for information regarding Westfax, Donahue stated that he only searched emails. (Donohue at pg. 20:2-7). No search was conducted for this information in Defendant's accounting records or hard copies. (*Id.* at pg. 19:23-25; 20:1-12). Donohue also admitted that he is unaware of any search being conducted of Defendant's email server. (*Id.* at pg. 34:17-19).

On April 27, 2018, Plaintiff deposed Neha Patel ("Patel"), the sales manager for Defendant. Patel's deposition transcript is attached as Exhibit 4. Patel testified that she keeps records of customer information, including fax numbers, on an Excel spreadsheet. (Patel Dep. at

4

pg. 8:20-25 – 9:1-16). The Excel spreadsheet has never been produced. (Good Decl. ¶3).[1] Patel testified that her email address is npatel@alliancefunds.com. (Patel Dep. at pg. 43:18-20). Patel also testified that she was never asked to search for any documents regarding this litigation. (*Id.* at pg. 25:3-5; 65:18-20). In fact, according to Patel, she never searched her emails for documents sent by Westfax and was never asked to look for detailed fax reports from Westfax. (*Id*. at 44:2-4; 44:25 – 45:1-7).

Finally, on August 21, 2018, Plaintiff deposed Kathy Ponce de Leon ("Ponce de Leon"), controller and staff accountant for Defendant. (Ponce de Leon Dep at pg. 6:8-19). Ponce de Leon's deposition transcript is attached as Exhibit 5. Ponce de Leon testified that she was never asked to locate any documents for this litigation. (*Id.* at pg. 19:8-10). Ponce de Leon also testified that she was never asked to retrieve any Westfax invoices, although the hard copies should have been retained in a file system. (*Id.* at pg. 31:13 - 32:6). No documents from that filing system have been produced. (Good Decl. ¶3).

Plaintiff attempted to resolve these discovery issues with Defendant but was unsuccessful. (Good Decl. ¶5). This motion followed.

## **Standards for Motions to Compel**

The Federal Rules of Civil Procedure allow for broad discovery. Fed. R. Civ. P. 26(b)(1); *Conti v. American Axle and Mfg., Inc.*, 326 Fed.Appx. 900, 904 (6th Cir. 2009). Rule 26(b)(1) provides, in part:

> Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at trial if the

---

[1] Defendant has produced no documents whatsoever in this litigation.

5

discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1).  "Because discovery itself is designed to help define and clarify the issue, the limits set forth in Rule 26 must be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Conti*, 326 Fed.Appx. at 904 (*quoting Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

A party may seek discovery of any document "in the responding party's possession, custody and control," that is within the scope of Rule 26(b).  Fed. R. Civ. P. 34(a); *Michigan Millers Mut. Ins. Co. v. Westport Ins. Corp.*, 2014 WL 5810309, at *3 (W.D. Mich. Nov. 7, 2014); *Siser North America, Inc. v. Herika G. Inc.*, 325 F.R.D. 200, 240 (E.D. Mich. 2018). The burden is upon the objecting party to show why a discovery request is improper.  *Strategic Marketing and Research Team, Inc. v. Auto Data Solutions, Inc.*, 2017 WL 1196361, at * 2 (E.D. Mich. Mar. 31, 2017); *see also Rubin v. Islamic Republic of Iran*, 349 F.Supp.2d 1108, 1111 (N.D. Ill. 2004); 8 Wright and Miller, *Federal Practice and Procedure*, § 2173 at 543–544 (1970).  If the party fails to make the requisite showing, Federal Rule of Civil Procedure 37 allows the Court to enter an order compelling the party to comply with discovery.  *Strategic Marketing*, 2017 WL 1196361, at * 2; *see also Whiteamire Clinic, P.A., Inc. v. Quill Corp.*, 2013 WL 5348377, at *2 (N.D. Ill. Sept. 24, 1013).

## Argument

**I.      Defendant should be ordered to produce all fax advertisements and related documents sent during the four-year class period.**

There can be no question that the detailed transmission records sent from Westfax is relevant.  The detailed transmission records will show to whom the Fax was successfully sent, which is essential for determining the ascertainability of the class. The Sixth Circuit has found

6

that "in the context of the TCPA where fax logs have existed listing each successful recipient by fax number, such a 'record demonstrates that the fax numbers are objective data satisfying the ascertainability requirement.'" *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 471 (6th Cir. 2017) (quoting *Am. Copper & Brass, Inc. v. Lake City Indus. Prod., Inc.*, 757 F.3d 540, 545 (6th Cir. 2014)).

Moreover, based on receiving the Fax, Plaintiff is not only entitled to discovery regarding it, but also discovery as to <u>all</u> fax advertisements sent during the four-year class period. This issue was addressed at length by the Southern District of New York in *Bais Yaakov of Spring Valley v. Houghton Mifflin Harcourt Publishers*, 36 F. Supp.3d 417 (S.D.N.Y. 2014). In *Bais Yaakov*, plaintiff moved to compel defendants and their non-party fax broadcaster, Westfax, Inc. (which had been served a subpoena), to provide discovery on all fax advertisements sent by defendants during the applicable four-year statute of limitations period, and not just to provide discovery on the single fax ad defendant sent to plaintiff. *Id*. at 419. The court granted the motion, finding the argument that plaintiff lacked standing to seek class-wide recovery for, and to seek discovery regarding, faxes other than the one it received, "leapfrogs over plaintiff's entitlement to discovery in aid of its future motion for class certification and advances arguments more properly addressed in the context of such a motion." *Id*. at 419, 422.

Defendant's opposition to producing all fax advertisements sent during the class period is an attempt to deny class certification as to fax advertisements that have neither been produced to Plaintiff nor presented to the Court. A similar effort was rejected by the Southern District of New York, discussed at length in *Bais Yaakov* as follows:

> Although the Court does not have before it the written submissions made to Judge Davison on the motion to compel in *Bais Yaakov of Spring Valley v. Richmond, The Am. Univ. in London, Inc.,* 13CV4564 (CS)(PED), another TCPA case involving the same Plaintiff and Plaintiff's counsel, the Court nonetheless agrees

7

with his determination. In granting a motion to compel a response to a subpoena served on the non-party which was responsible for sending out fax advertisements on behalf of the defendant, Judge Davison pointed out to counsel for the non-party, "[Y]ou're asking me to declare now that those unknown number of faxes, fax templates, whatever, and those unknown recipients have nothing to do with this case. . . .it seems to me that you're seeking a preemptive ruling now on an issue that really ought to be determined down the road after discovery." July 2, 2014, Letter (Docket # 34), Ex. A at 17. He further noted that the non-party was "seeking sort of a predictive ruling about a determination that's going to be made down the road, and it seems to me that my role here is a much more limited one, which is to determine whether the subpoena served on your client ... seeks relevant documents which may lead to the discovery of admissible evidence or evidence that's relevant to a class certification application, and it's hard for me to see how it isn't." *Id.* at 17–18. Defendants contend that "key arguments that Defendants have fully briefed in this case were neither made nor addressed by the Court in the *Richmond* case and, thus, that ruling should not apply here." July 11, 2014, Letter (Docket # 36) at 1. However, having reviewed all of the key arguments made by Defendants in this case, the <u>Court concludes that</u>, as in *Richmond,* <u>Defendants here are seeking a "predictive ruling" about class standing, an issue to be determined on a future motion for class certification</u>.

*Basis Yaakov*, 36 F. Supp.3d at 422 n. 9 (emphasis added).

Similarly, in *Whiteamire*, 2013 WL 5348377, at *2, a TCPA junk fax class action, the court rejected the argument that plaintiff was not entitled to discovery of <u>all</u> fax advertisements sent during the class period. The defendant in *Whiteamire* argued discovery requests regarding faxes other than the one sent to plaintiff was premature because the requests sought information that was not necessary to determine whether a class should be certified. *Id*. at *2. In rejecting this argument, the court recognized plaintiff was <u>entitled to all of the fax advertisements sent during the class period</u>, noting first that discovery was not bifurcated, and then stating:

> Moreover, the information plaintiff seeks in the contested first and second requests for production is clearly relevant to class discovery; specifically, to the issues of numerosity, commonality, and typicality. As explained above, plaintiff proposes a class of persons who received faxed advertisements without a proper opt out notice, with whom Quill did not have an EBR, and from whom Quill did not have prior express permission or invitation to send such faxes (Compl. at ¶ 20). Plaintiff's requests seek, for example, <u>copies of all faxed advertising documents</u>, documents showing express permission or invitation to receive such faxes, and documents indicating an EBR with the recipients of the facsimiles.

8

> As we made clear to Quill in multiple court hearings, the Court cannot permit Quill on one hand to contest class certification and on the other hand deny plaintiff the discovery relevant to its position that a class should be certified.

*Whiteamire,* 2013 WL 5348377, at *3 (emphasis added).[2]

Here, Plaintiff has alleged Defendant engaged in a practice during the entirety of the class period of sending fax advertisements which violated the TCPA and its implementing regulations in that the faxes were sent without permission, without an EBR, and without a compliant opt-out notice. The detailed report from Westfax will show to whom the Fax(es) were sent and how many transmissions were successful. In other words, the identity of the putative class members is contained within that report and is needed for class certification. *See Sandusky*, 863 F.3d at 471; *Am. Copper*, 757 F.3d at 545. As is evident from the deposition testimony of Donahue, Patel, and Ponce de Leon, Defendant has not made a good faith attempt to search for this report or any other information regarding fax advertisements. Accordingly, Plaintiff seeks an order from the Court requiring Defendant to conduct such a search and produce the detailed report to Plaintiff.

Defendant's answers to Plaintiff's interrogatories and requests to produce also indicate that it may be unable to conduct a search for the detailed log and other fax advertisements sent during the relevant time period. Throughout its discovery answers, Defendant repeatedly states that it "knows of no business method by which Defendant can ascertain 'any document that promotes, advertises, announces, or describes the commercial availability of, or quality of, any property, goods, or services of Defendant.'" If that is the case, Plaintiff requests that it be allowed to image Defendant's hard drives and servers in order to obtain this information. Plaintiff is willing to conduct the imaging at its own expense.

---

[2] *See also Central Alarm Signal, Inc. v. Business Financial Services, Inc.*, 2016 WL 3595627, at *2 (E.D. Mich. July 5, 2016) (in TCPA class action, court held that all fax advertisements sent by the defendants is discoverable).

9

This identical issue was addressed in *Whiteamire*. As previously discussed, the plaintiff in *Whiteamire* filed a complaint against defendant alleging violations of the TCPA. As part of the litigation, the plaintiff sought to create images of the defendant's hard drives and servers based on the belief that those images would demonstrate how many fax advertisements the defendant sent and to whom. The defendant objected, claiming that the discovery request would be unduly burdensome and that the images would contain privileged information. In granting the plaintiff's motion to compel, the court held that requiring the production of images of hard drives is neither prohibited by the Federal Rules nor unprecedented. *Whiteamire*, 2013 WL 5348377 at * 6 (collecting cases). The court was persuaded by the fact that the plaintiff was willing to both pay for the imaging and enter into a protective order regarding the information obtained. *Id.*

Plaintiff is also willing to enter into a protective order regarding the information obtained. Plaintiff believes these images will most likely lead to the discovery of the Westfax detailed transmission log as well as any other fax advertisements sent. As *Whiteamire* makes clear, Plaintiff is entitled to this information.

## Conclusion

Wherefore, for the foregoing reasons, Plaintiff respectfully requests that the Court enter an Order requiring Defendant to produce the detailed transmission records along with any other documents relating to fax advertisements sent during the relevant time period, or, in the alternative, to make available its hard drive(s) and server(s) to allow Plaintiff, at its expense, to create forensic images of the hard drives of the computers and servers utilized by Defendant in transmitting the Fax and other fax advertisements.

Respectfully submitted,

VANDENBERG & SONS FURNITURE, INC,
individually and as the representative of a class of
similarly-situated persons

By: s/ Ross M. Good
Ross M. Good
Ryan M. Kelly
ANDERSON + WANCA
3701 Algonquin Road, Suite 500
Rolling Meadows, IL  60008
Telephone:  847-368-1500 / Fax:  847-368-1501
rgood@andersonwanca.com
rkelly@andersonwanca.com

11

## **CERTIFICATE OF SERVICE**

      I hereby certify that on October 29, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

                                              s/ Ross M. Good