UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

VANDENBERG & SONS FURNITURE, INC.,

    Plaintiff,

v.

ALLIANCE FUNDING GROUP, et al.,

    Defendants.
_____/

Case No. 1:15-CV-1255

HON. GORDON J. QUIST

## OPINION

Plaintiff, Vandenberg & Sons Furniture, Inc., individually and behalf of all others similarly situated, alleges that Defendant, Alliance Funding Group, violated the Telephone Consumer Protection Act of 1991 (TCPA), 47 U.S.C. § 227, *et seq.*, by sending unsolicited advertisements via fax. (ECF No. 1.) Vandenberg has moved for class certification pursuant to Fed. R. Civ. P. 23(a) and (b)(3), to appoint Vandenberg as the class representative, and to appoint Vandenberg's counsel as class counsel pursuant to Fed. R. Civ. P. 23(g). (ECF No. 120.) Alliance opposes the motion. (ECF No. 122.) On November 5, 2020, the Court heard argument on Vandenberg's motion. For the reasons stated below, Vandenberg's motion is granted in part and denied in part.

    **I.**    **Background**

This case arises from a single fax sent in 2012. Alliance is a California corporation that provides financing for equipment leasing to small businesses. Vandenberg is a Michigan corporation that is in the furniture business. On March 19, 2012, Alliance sent Vandenberg a two-page fax, offering a pre-approved line of credit in the amount of $100,000. (ECF No. 121-6.) At

the bottom of each page of the fax, there is an "Opt-Out Notice" that provides the fax recipient with instructions on how "[t]o stop future fax advertisements[.]" (*Id.* at PageID.1290-1291.)

Over three-and-a-half years after the fax was received, on December 3, 2015, Vandenberg initiated this putative class action under the "junk fax" provision of the TCPA, 47 U.S.C. § 227(b)(1)(C). Under this provision, it is unlawful to send an unsolicited advisement via fax unless: (1) the parties have an established business relationship; (2) the recipient granted permission by either providing the fax number to the sender or by making the fax number publicly available; or (3) the unsolicited advertisement contains the requisite opt-out notice. 47 U.S.C. § 227(b)(1)(C). The TCPA creates a private right of action for any entity that receives an advertisement in violation of the Act and provides for statutory damages in the amount of $500 for each violation that can increase to $1,500 if the violation is made "willfully or knowingly." 47 U.S.C. § 227(b)(3).

The parties dispute whether Vandenberg consented to receiving the fax by voluntarily providing its fax number to Alliance. Vandenberg's Business Manager states that Vandenberg did not provide permission to send the fax. (ECF No. 121-1 at PageID.1248.)  Alliance does not have any evidence to establish that Vandenberg consented to receiving the March 2012 fax.  Instead, Alliance's Vice President of Sales and Sales Manager explain that Alliance sent faxes only to potential customers that had requested information and provided a fax number. (ECF No. 69-4 at PageID.625-626; ECF No. 121-4 at PageID.1272.)  According to these two employees, Alliance obtained fax numbers through sales representatives cold calling businesses.  Each sale representative allegedly kept a list of fax numbers in an Excel spreadsheet, and Alliance never bought fax lists.

Since filing the Complaint, the parties have spent considerable time in discovery.  The passage of time and Alliance's lack of record keeping have resulted in the production of only a

few documents. Vandenberg learned that Alliance occasionally used a company called WestFax to fax potential customers. Alliance produced three documents related to WestFax, which consisted of four pages—a March 2, 2013, WestFax Invoice; a March 9, 2013, WestFax Invoice; and a two-page fax template that was identical to the fax sent to Vandenberg. (ECF No. 121-5.) Vandenberg, frustrated with Alliance's conduct during discovery,[1] filed several motions to compel. (ECF Nos. 38, 52, 69, and 85.) In response to Vandenberg's final motion to compel, Alliance's Vice President of Sales submitted an affidavit declaring that he could not find any other relevant document on Alliance's computer servers in addition to the three documents that had been already produced. (ECF No. 99-1.)

Vandenberg also subpoenaed WestFax for additional records. In response to the subpoena, WestFax produced thirteen additional invoices dated between January 17, 2013, and June 9, 2014. (ECF No. 121-7 at PageID.1306-1318.) The invoices show that WestFax successfully sent 465,758 pages via fax and charged Alliance $13,513.82. WestFax also produced an "opt-out list," which included 7,435 fax numbers. (*Id.* at PageID.1320-1404.) The opt-out list shows when a specific fax number contacted WestFax and requested that it no longer receive faxes from Alliance. The list does not show when Alliance sent a fax to the fax number. Although WestFax no longer had the fax transmission records, the President of WestFax stated that Alliance requested detailed transmission records be sent to two Alliance company email addresses. (*Id.* at PageID.1294.) Alliance, however, alleges that it no longer has those emails.

---

[1] The record contains several examples of Alliance's questionable conduct. For example, Alliance allegedly did not disclose potential witnesses, who were Alliance employees, during discovery. Vandenberg then had issues serving deposition subpoenas on these employees and these employees attending depositions. (ECF No. 69-4 at PageID.659-664; ECF No. 69-5 at PageID.687-689.) Another example occurred at Mr. Donahue's deposition. In response to the question of whether Mr. Donahue had a work email address, he responded: "Yes, dumb ass." (ECF 121-4 at PageID.1271.)

3

Vandenberg has moved to certify two classes and has proposed the following class definitions:

> **Class A.** All persons or entities, identified in the WestFax opt-out list for Defendant, who were successfully sent the same or similar fax as Exhibit A to the Complaint from December 3, 2011 to December 3, 2015.
>
> **Class B.** All persons who were successfully sent the same or similar fax as Exhibit A to the Complaint on January 18, 2013, January 23, 2013, February 25, 2013, March 9, 2013, March 19, 2013, April 3, 2013, April 10, 2013, May 6, 2013, June 5, 2013, June 17, 2013, July 9, 2013, September 3, 2013, and June 9, 2014.

(ECF No. 120 at PageID.1218.)

## II.  Legal Standard

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348, 131 S. Ct. 2541, 2550 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01, 99 S. Ct. 2545, 2557 (1979)).  Although the "trial court has broad discretion in deciding whether to certify a class," the "discretion must be exercised within the framework of Rule 23." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). The party seeking class certification "bears the burden of 'affirmatively demonstrat[ing]' compliance with Rule 23." *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 466-67 (6th Cir. 2017) (quoting *Wal-Mart*, 564 U.S. at 350, 131 S. Ct. at 2550).

"Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Wal-Mart,* 564 U.S. at 349, 131 S. Ct. at 2550.  Under Rule 23(a), the party seeking certification must satisfy the following requirements: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the

4

claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

In addition to satisfying the Rule 23(a) prerequisites, the action must fall within one of the three categories of Rule 23(b). *Shady Grove Orthopedic Assoc, PA v. Allstate Ins. Co.*, 559 U.S. 393, 398, 130 S. Ct. 1431, 1437 (2010). At issue in the instant case is Rule 23(b)(3), which requires a finding "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Sixth Circuit has held that Rule 23(b)(3) has an implied ascertainability requirement. *Cole v. City of Memphis*, 839 F.3d 530, 541 (6th Cir. 2016).

### III.   Analysis

Alliance contends that Vandenberg has failed to satisfy each requirement in Rule 23(a) and Rule 23(b)(3). The majority of Alliance's arguments are based on two issues: (1) whether individualized questions of consent preclude class certification, and (2) whether the lack of records, such as a fax transmission log, preclude class certification. The Court will first address these two issues under the Rule 23(b) requirements and then proceed to the less stringent Rule 23(a) requirements.

#### A.   Rule 23(b): Predominance

"In discerning whether a putative class meets the predominance inquiry, courts are to assess 'the legal or factual questions that qualify each class member's case as a genuine controversy,' and assess whether those questions are 'subject to generalized proof, and thus applicable to the class as a whole." *Sandusky Wellness,* 863 F.3d at 468 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623, 117 S. Ct. 2231, 2249 (1997) and *Bridging Communities Inc. v. Top Flite Fin.*

*Inc.,* 843 F.3d 1119, 1124 (6th Cir. 2016)) (internal citations omitted).  "[T]he key is to 'identify[ ] the substantive issues that will control the outcome,' in other words, courts should 'consider how a trial on the merits would be conducted if a class were certified.'" *Id.* (quoting *Gene & Gene, LLC v. BioPay, LLC*, 541 F.3d 318, 326 (5th Cir. 2008)).

Vandenberg argues that there are four class-wide questions to be decided on the merits: (1) whether the fax is an "advertisement"; (2) whether Alliance is a "sender" of the fax; (3) whether Alliance can carry its burden of proving it obtained "prior express invitation or permission" to send the fax; and (4) whether the fax contains a compliant opt-out notice such that Alliance could avail itself of the established business relationship.  (ECF No. 121 at PageID.1227.)   Alliance argues that the "essential inquiry" is whether each fax recipient consented to receiving the fax; therefore, Alliance contends that the individualized issues of consent predominate over any other class-wide question.  (ECF No. 122 at PageID.1439.)  Although Vandenberg argues that consent is an affirmative defense, (ECF No. 124 at PageID.1474), Vandenberg maintains the burden of showing that class certification is appropriate, *see Sandusky Wellness,* 863 F.3d at 466-67.

Whether individualized issues of consent predominate over any other class-wide question is a close call. The Sixth Circuit has considered this issue in two TCPA junk fax cases.  In *Bridging Communities,* the Sixth Circuit reversed the denial of class certification and held that the "mere mention of a defense is not enough to defeat the predominance requirement of Rule 23(b)(3)." 843 F.3d at 1124.  There, the defendant paid a "fax-blasting" company to fax its advertisements to a list of fax numbers that the company had purchased.  *Id.*  The plaintiffs presented evidence that the fax blasting company "failed to contact anyone on the list it purchased from InfoUSA to verify consent prior to faxing them advertisements." *Id.* at 1125.  "In response, [the defendant] merely alleged that class members might have given consent in some other way." *Id.*  The Sixth Circuit

6

was "unwilling to allow such 'speculation and surmise to tip the decisional scales in a class certification ruling[.]'" *Id.* (quoting *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 298 (1st Cir. 2000)). As the Sixth Circuit explained: "Holding otherwise and allowing such speculation to dictate the outcome of a class-certification decision would afford litigants in future cases 'wide latitude to inject frivolous issues to bolster or undermine a finding of predominance.'" *Id.* at 1126 (quoting Robert G. Bone & David S. Evans, *Class Certification and the Substantive Merits*, 51 Duke L.J. 1251, 1269 (2002)).

One year later, in *Sandusky Wellness*, the Sixth Circuit affirmed the denial of class certification where the district court found that "questions of consent presented an individualized issue" and would have "entailed combing through hundreds of thousands of customer forms that [the defendant] had produced as evidence of consent[.]" 863 F.3d at 467. There, the proposed class initially had 53,502 members but the parties agreed that over 10,000 people did not actually receive the fax. *Id.* at 465. With respect to the consent issue, the defendant produced over 450,000 pages of various forms where customers had provided their fax numbers and the requisite consent. *Id.* at 465-66. The Sixth Circuit determined that "[i]dentifying solicited fax recipients through a form-by-form inquiry is sufficiently individualized to preclude class certification." *Id.* at 469. Furthermore, the Sixth Circuit distinguished the case from *Bridging Communities* because the defendant had produced "concrete evidence of consent" in the form of documents. *Id.*

The instant case is distinguishable from both *Bridging Communities* and *Sandusky Wellness*. Unlike the defendant in *Bridging Communities,* Alliance has done more than "mere[ly] mention" that some of the fax recipients consented. Through depositions and affidavits, Alliance's Vice President of Sales and Sales Manager asserted that Alliance had a company policy to send faxes only to potential customers who provided a fax number to a sales representative. (ECF No.

7

69-3 at PageID.570, 572, 579, 596, 597-598; ECF No. 69-4, PageID.642-643; ECF No. 99-1 at PageID.988-990.)  Alliance argues that it never purchased "fax lists."  (ECF No. 99-1 at PageID.986.)  Therefore, Alliance contends it obtained fax numbers only if the customer or potential customer provided the fax number to a sales representative.  (*Id.*)  Although some sales representatives may have obtained data from other companies, the purchased data generally did not contain fax numbers.  (*Id.* at PageID.988.)  The sales representative would then compile the fax numbers into an Excel spreadsheet which was never uploaded to Alliance's generalized server.  (*Id.* at PageID.988-989.)  This testimonial evidence bolsters somewhat the argument that some of the fax recipients voluntarily consented.

On the other hand, unlike the defendant in *Sandusky Wellness*, Alliance has not produced documents that would require the Court to perform a form-by-form inquiry for each fax recipient.  Alliance produced only four pages of documents.  Alliance relies exclusively on an alleged unwritten policy that the sales representatives should send faxes to individuals or companies that consented to receiving the fax.  A policy that the magistrate judge noted was "hard for [him] to fathom," (ECF No. 97 at PageID.929), and a "huge stretch of credibility to believe," (*id.* at PageID.931), in light of no documentary evidence.

Alliance argues that this Court should follow *Sawyer v. KRS Biotechnology, Inc*, No. 1:16-CV-550, 2018 WL 4214386 (S.D. Ohio Sept. 5, 2018). In *Sawyer*, the district court adopted the magistrate judge's recommendation that individual issues of consent predominated.  *Id.* at *4. The defendant admitted liability to the plaintiff but also presented uncontradicted evidence in the form of deposition testimony that it never bought fax lists and sent faxes to customers after a sales representative obtained permission through various ways, such as attending trade shows or contacting potential customers individually.  *Id.* at *3-4.  Based on this evidence, the district court

found that the issue of consent existed as to 34,772 of the alleged 34,773 fax receipts. *Id.* at *4. In holding that the individualized issues of consent predominated, the district court reasoned that "[l]itigating this matter would require testimony from various sales representatives and individual fax recipients to determine how each fax number landed on the list and whether fax permission had been received." *Id.*

Having considered the relevant case law, the Court finds that individual issues of consent do not predominate at this time. Based on the lack of records, this Court, like the magistrate judge, has difficulty accepting as fact that Alliance had a policy of obtaining consent before sending any fax. Alliance did not send just a few faxes. It paid WestFax over $13,000 to send 465,758 pages. How did Alliance obtain the fax numbers? Where is the company's written policy? Where are the sales representatives testifying as to following any policy? At the hearing, the Court expressed concern as to why Vandenberg did not depose any sales representative. Vandenberg responded that Alliance did not disclose any such witness. The record contains no evidence as to the number of sales representatives employed by Alliance. Because Alliance has not disclosed any sales representative other than the Vice President of Sales and Sales Manager as a possible witness in discovery, it is unlikely that any sales representative will be permitted to testify for Alliance at trial. *See* Fed. R. Civ. P. 37(c)(1). Based upon the current record, the Court is not willing to accept that Alliance obtained the fax numbers via sales representative cold calling companies. Allowing Alliance to defeat class certification based solely on the testimony of two management employees regarding an unwritten policy would create a roadmap for future companies to defeat class certification. In other words, "Send the fax but be sure to destroy all evidence of to whom you sent it." Or, Alliance may have had such a policy—wink, wink—fully expecting or even encouraging its employees to ignore the policy. This is not to say that Alliance did not have this

unwritten policy. But, as of now, the Court finds that whether such a policy existed can be decided at the class level. *See Randleman v. Fid. Nat'l. Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011) (noting "the district court's continuing obligation to ensure that the class certification requirements are met, and . . . the district court's ability to alter or amend the certification order").

### B. Rule 23(b): Ascertainability and Superiority

The second issue arises from the lack of records, such as a fax transmission log, which make it difficult to identify the class members. Alliance argues that this makes the proposed classes not ascertainable. The Sixth Circuit has not ruled whether class member identity is properly analyzed under Rule 23(b) predominance, ascertainability, or superiority, but "the difficulty of identifying class members in the absence of fax logs [is] a separate and valid concern[.]" *Sandusky Wellness*, 863 F.3d at 473-74.

A class is ascertainable when a class description is "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Young v. Nationwide Mut. Ins. Co*., 693 F.3d 532, 538 (6th Cir. 2012). "[A]scertainability is a requirement tied almost exclusively to the practical need to notify absent class members and to allow those members a chance to opt-out and avoid the potential collateral estoppel effects of a final judgment." *Cole v. City of Memphis*, 839 F.3d 530, 541 (6th Cir. 2016). Similarly, "[i]n considering whether the superiority requirement of Rule 23(b)(3) is satisfied, courts consider 'the difficulties likely to be encountered in the management of a class action.'" *Young*, 693 F.3d at 545 (quoting *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 567 (6th Cir. 2007)).

Class B is defined as all individuals who received Alliance's fax on dates certain. The specific dates are the dates listed on the WestFax invoices.[2] Vandenberg argues that the proposed class definition is ascertainable because it is "defined by objective criteria' of having been sent a specific fax on a specific date." (ECF No. 124 at PageID.1480.) Vandenberg contends "[t]hat is all that is required for 'ascertainability' in the Sixth Circuit." (*Id.* (citing *Rikos v. Procter & Gamble Co.*, 799 F.3d 487, 525-26 (6th Cir. 2015) and *Young*, 693 F.3d at 538).)

Whether the Court views this issue under ascertainability, superiority, or predominance, the ability to identify Class B members precludes class certification. Without a fax transmission log, it is impossible to identify who received the fax on these specific dates. The invoices show that 465,758 pages were successfully sent. Vandenberg asserts that there were 232,879 faxes sent based on the assumption that Alliance used the two-page fax template for each fax. This assumption ignores the fact that some of the invoices show that an odd number of pages were successfully sent. Nonetheless, even if Vandenberg's calculation is correct, Vandenberg has not proposed any way to provide notice to the Class B members without having the fax transmission log. Furthermore, without the fax transmission log, the Court would have to review 232,879 affidavits certifying that an individual received the fax on specific date. And there is no objective data to verify any of this information. *See American Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.,* 757 F.3d 540, 545 (6th Cir. 2014) ("fax numbers are objective data satisfying the ascertainability requirement"). These are the kind of "practical concerns" highlighted in *Sandusky Wellness*. Thus, the Court finds that the difficulty of identifying the Class B members precludes class certification.

---

[2] The initial proposed class definition did not include March 19, 2012, as a date in the Class B class definition. In its reply, Vandenberg explains that it "inadvertently" left the date that it received the fax out of the class definition. (ECF No. 124 at PageID.1482.)

11

Vandenberg argues that Alliance's failure to record and retain information cannot be used to defeat class certification. (ECF No. 121 at PageID.1242 (citing *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990).) Although Vandenberg does not cite any Sixth Circuit precedent in support of this argument, it is a logical argument. A company should not be able to avoid liability by failing to keep records. But Vandenberg is not without blame as it waited over three years after receiving the fax to file this class action.  In *Sandusky*, the Sixth Circuit criticized a plaintiff who waited three years to file the class action:

> Sandusky waited three years after receipt of the one-page Prolia fax to sue Besse for failing to include a properly worded opt-out notice. It did so when fax logs no longer existed to identify each recipient and without a proposed alternative for identifying class members. Perhaps if Sandusky had brought suit earlier, fax logs would have existed, and their absence would not pose an independent barrier to class certification. Or, Sandusky could have filed an individual claim against Besse and presented a copy of the Prolia fax as evidence of receipt. Instead, Sandusky did neither of these things. By choosing to file a class action when it did, Sandusky shouldered the burden of proving that its proposed class satisfied Rule 23. It simply did not meet that burden here.

*Sandusky Wellness*, 863 F.3d at 473-74.

Class A is a closer question. Because the opt-out list contains fax numbers that contacted WestFax, the Court finds that it can provide notice to these class members. The opt-out list, however, is not as helpful as the fax transmission log. The opt-out list does not show when the fax number received a fax or the number of pages of the fax. Although "no circuit court has ever mandated certification of a TCPA class where fax logs did not exist," *Sandusky Wellness*, 863 F.3d at 473, the Court finds that the opt-out list containing fax numbers, the only fax template that was produced, and the WestFax invoices, are sufficient objective data despite the absence of a fax transmission log.  The parties, the Court or an expert appointed by the Court, will still likely have to review thousands of affidavits from the fax recipients to assure that they received an unsolicited

fax from Alliance.  While this is no small task and the faxing occurred years ago, the Court finds Class A is ascertainable.

The Court further finds that a class action is the superior form of adjudication for Class A. "'[C]ases alleging a single course of wrongful conduct are particularly well-suited to class certification.'" *Young*, 693 F.3d at 545 (quoting *Powers v. Hamilton County Pub. Defender Com'n*, 501 F.3d 592, 619 (6th Cir. 2007)).  Alliance is correct that individual issues may exist, but the threshold issues—whether Alliance had an unwritten policy to obtain consent and whether Alliance used the same or similar fax template for each fax—are common to all class members. "[W]here a threshold issue is common to all class members, class litigation is greatly preferred." *Id.*

### C. Rule 23(a): Numerosity

Rule 23(a)(1) requires that the class is so numerous that joinder of all members is impracticable.  "There is no strict numerical test for determining impracticability of joinder." *In re Am. Med. Sys., Inc.*, 75 F.3d at 1079.  "When class size reaches substantial proportions . . . the impracticability requirement is usually satisfied by the numbers alone." *Id.*

Class A satisfies the numerosity requirement.  According to the opt-out list, Class A contains up to 7,435 potential class members.  Alliance's concerns that some of these fax recipients may not have received the same fax or that the fax recipient may have consented to receiving the fax are without merit.  The proposed Class A definition includes only those who received the same or similar fax and those who did not consent. Although the number in the class may not be 7,435 exactly, the Court finds that the numerosity requirement is satisfied at this time.

### D. Rule 23(a): Typicality and Commonality

Rule 23(a)(2) requires that there are questions of law or fact common to the class. Rule 23(a)(3) requires that the claims or defenses of the representative parties be typical of the claims or defenses of the class. A class representative's claim is typical if the claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *In re Am. Med. Sys., Inc.*, 75 F.3d at 1082.

As addressed under the Rule 23(b) predominance inquiry, the Court finds that the issue of consent can be addressed at the class level at this time based on whether Alliance had a company policy of obtaining consent. Other common questions of law or fact include whether Alliance is a sender of the fax, whether Alliance always used the fax template produced in discovery, and whether the fax is an advertisement. Furthermore, Vandenberg has sufficiently shown its claim is typical of the class because the claims arise from Alliance's alleged practice of sending unsolicited fax advertisements.

### E. Rule 23(a): Adequacy

Rule 23(a)(4) requires that representative parties "will fairly and adequately protect the interests of the class." "There are two criteria for determining whether the representation of the class will be adequate: 1) The representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter v. Gen. Motors Corp.,* 532 F.2d 511, 524-25 (6th Cir. 1976).

The Court finds that Vandenberg can adequately represent Class A. As stated above, Vandenberg's claims are similar to the claims of the Class A members. Accordingly, the Court will appoint Vandenberg as the class representative.

The Court further finds that Vandenberg's counsel is qualified to represent the class. Although Alliance points out that courts have questioned the ethics of Plaintiff's firm, *see Physicians Healthsource, Inc. v. Allscripts Health Solutions, Inc*., 254 F. Supp. 3d 1007, 1031 (N.D. Ill. 2017), Plaintiff's firm has effectively litigated several class actions in this district, *see Physicians Healthsource, Inc. v. Stryker Sales Corporation*, No. 1:12-cv-729 (W.D. Mich.); *Van Sweden Jewelers, Inc. v. 101 VT, Inc.*, No. 1:10-cv-253 (W.D. Mich.); *American Copper & Brass, Inc. v. Lake City Industrial Products, Inc.*, No. 1:09-cv-1162 (W.D. Mich.). The Court does not discern any reason Plaintiff's counsel would not fairly and adequately represent the interests of the class in the instant case. Accordingly, the Court will appoint Plaintiff's firm as class counsel pursuant to Rule 23(g).

### VI. Conclusion

Although it is a close call, the Court finds that Vandenberg has shown that class certification is warranted for Class A at this time. As the case proceeds, the Court may revisit whether class certification is appropriate if necessary.

A separate order will issue.

Dated: January 22, 2021                              /s/ Gordon J. Quist
                                                                   GORDON J. QUIST
                                                       UNITED STATES DISTRICT JUDGE