# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| VANDENBERG & SONS FURNITURE, INC., a Michigan corporation, individually and as the representative of a class of similarly-situated persons, | ) ) ) ) ) | |
| | | No. 1:15-CV-1255 |
| Plaintiff, | ) ) ) | |
| | | Hon. Gordon J. Quist |
| v. | ) ) | |
| | | Magistrate Judge Ray Kent |
| ALLIANCE FUNDING GROUP, | ) ) | |
| Defendant. | ) | |

## PLAINTIFF'S BRIEF IN SUPPORT
## OF FINAL APPROVAL OF SETTLEMENT

Brian J. Wanca
Ross M. Good
Ryan M. Kelly
Wallace C. Solberg
ANDERSON + WANCA
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
Telephone: (847) 368-1500
Facsimile: (847) 368-1501

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

TABLE OF CONTENTS................................................................i

INDEX OF EXHIBITS................................................................iii

INDEX OF AUTHORITIES ..........................................................iv

STATEMENT OF THE ISSUES ....................................................viii

CONTROLLING AUTHORITY....................................................ix

INTRODUCTION ......................................................................1

    I.  Preliminary approval and dissemination of notice. ....................1

    II. Background and summary of settlement....................................1

    III. The Settlement Class was appropriately notified about the
        settlement. ..................................................................5

ARGUMENT ...........................................................................7

    I.  The Court should approve the Settlement. ..............................7

        A.  Standard for judicial evaluation and approval............................7

        B.  Factors to be considered in determining whether a settlement
            is fair, reasonable, and adequate. .............................................8

            1.  The risk of fraud or collusion. ...............................................8

            2.  The complexity, expense, and likely duration of the
                litigation. .................................................................9

            3.  The amount of discovery. ......................................................9

             4.  Likelihood of success on the merits. .......................................9

            5.  Opinion of Class Counsel and Class Representative............10

            6.  The reaction of absent class members.................................11

             7.  The public interest. .............................................................11

    II. Attorneys' fees and costs from the Settlement Fund are fair,
        reasonable, and appropriate.........................................................12

        A.  The Court should approve Defendant's agreement to pay
            Class Counsel a percentage of the Settlement Fund as
            attorney's fees. ......................................................................12

        B.  The requested fees are within the market rate for this type of
            case .......................................................................................15

i

III. The Court should approve the agreed incentive payment to
Plaintiff. ................................................................................................ 18

CONCLUSION................................................................................................... 19

CERTIFICATE OF SERVICE ........................................................................... 21

## INDEX OF EXHIBITS

Declaration of Dorothy Sue Merryman.........................................................................A

Proposed Final Approval Order .................................................................................B

# INDEX OF AUTHORITIES

**Cases**

*Adams v. Standard Knitting Mills, Inc.*, [1978 Transfer Binder] Fed. Sec. L. Rep. (CCH) P 96,377, 1978 U.S. Dist. LEXIS 20317 (E.D.Tenn. Jan. 6, 1978) ............................................................................ 15

*American Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*, Case No. 09-cv-1162 (W.D. Mich. July 24, 2012) ................................................ 9

*American Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*, Case No. 09-cv-1162 (W.D. Mich. Mar. 1, 2016) ................................................ 16

*Avio Inc. v. Creative Office Solutions, Inc.*, 10-cv-10622 (E.D. Mich. Dec. 10, 2012) (Roberts, J.) ................................................................... 16

*Basile v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 640 F. Supp. 697 (S.D. Ohio 1986) ......................................................................... 13

*Bennett v. Roark Capital Group, Inc.*, Case No. 2:09-cv-00421, 2011 WL 1703447 (D. Maine, 2011) ...................................................... 15

*Blum v. Stenson*, 465 U.S. 886 (1984) .......................................................... 12

*Brent v. Midland Funding, LLC,* 2011 WL 3862363 (N.D. Ohio 2011) ....... 7,12

*Boeing Co. v. Van Gemert,* 444 U.S. 472 (1980) ........................................... 12

*Brotherton v. Cleveland*, 141 F. Supp. 2d 907 (S.D. Ohio 2001) ................... 12

*CE Design v. Cy's Crab House North, Inc., et al.*, 259 F.R.D. 135 (N.D. Ill. 2009), *app. denied* (Sept. 9, 2009) ...................................... 10

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977) ........................................... 8

*Exclusively Cats Veterinary Hospital v. Anesthetic Vaporizer Services, Inc.*, 10-10620, 2010 WL 5439737 (E.D. Mich. Dec. 27, 2010) ................. 10

*G.M. Sign, Inc. v. Group C. Comm'n, Inc.*, 08 CV 4521, 2010 WL 744262 (N.D. Ill., Feb. 25, 2010) ................................................. 10

*Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269 (6th Cir. 2016) ........................................................... 13,14

*Gaskill v. Gordon*, 160 F.3d 361 (7th Cir. 1998) ......................................... 16

*GMAC Mtge. Corp. v. Stapleton*, 236 Ill. App. 3d 486 (1st Dist. 1992) ......... 18

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ................................................. 16

*Hinman v. M & M Rentals*, 545 F. Supp. 2d 802 (N.D. Ill. 2008), *app. denied* (June 17, 2008) ........................................................... 10

iv

*Hispanics United of DuPage County v. Village of Addison, Illinois*, 988
F. Supp. 1130 (N.D. Ill. 1997)...................................................................... 11

*Howes v. Atkins*, 668 F. Supp. 1021 (E.D.Ky.1987) ....................................... 15

*Imhoff Inv., Inc. v. Sammichaels, Inc.*, 10-10996, 2012 WL 4815090
(E.D. Mich. Oct. 1, 2012) ........................................................................... 10

*Imhoff Investment, LLC v. Sammichaels, Inc.*, Case No. 10-cv-10996
(E.D. Mich. Nov. 2, 2016) (Battani, J.)....................................................... 16

*In re Activision Sec. Litig.*, 723 F. Supp. 1373 (N.D.Cal.1989) ...................... 13

*In re Automotive Refinishing Paint Antitrust Litig.*, MDL No. 1426,
2008 WL 63269 (E.D. Pa. Jan. 3, 2008) ...................................................... 16

*In re Cincinnati Gas & Elec.*, 643 F. Supp. 148 (S.D.Ohio 1986)................... 15

*In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297 (N.D. Ga.
1993)............................................................................................................. 8

*In re Dun & Bradstreet Credit Services Customer Litigation*, 130
F.R.D. 366 (S.D. Ohio 1990) ...................................................................... 18

*In re Lupron Mktg. and Sales Practice Litig.*, No. 01-CV-10861-RGS,
2005 WL 2006833 (D. Mass. Aug. 17, 2005)............................................... 18

*In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002 (N.D. Ill.
2001)............................................................................................................ 10

*In re Prandin Direct Purchaser Antitrust Litig.*, 2015 WL 1396473
(E. D. Mich. Jan. 20, 2015)   .......................................................................15

*In re S. Ohio Corr. Facility*, 173 F.R.D. 205 (S.D.Ohio 1997) ........................ 15

*In re SmithKline Beecham Corp. Sec. Litig.*, 751 F. Supp. 525 (E.D. Pa.
1990)............................................................................................................ 11

*In re Sulzer Orthopedics, Inc.*, 398 F.3d 778 (6th Cir.2005) ........................... 12

*In re Telectronics Pacing Sys.*, 137 F. Supp. 2d 985 (S.D.Ohio 2001) ........... 15

*Int'l Union, United Auto, Aerospace and Implement Workers of
America v. General Motors Corp.,* 497 F.3d 615 (6th Cir. 2007) ........... 7,11

*Isby v. Bayh*, 75 F.3d 1191 (7th Cir. 1996) ..................................................... 7

*Jackson's Five Star Catering, Inc. v. Beason*, Case No. 10-CV-10010
(E.D. Mich. Apr. 5, 2015)..................................................................... 10,16

*Johnson v. Midwest Logistics Systems, Ltd.*, No. 11-cv-1061, 2013 WL
2295880 (S.D. Ohio May 24, 2013).............................................................. 15

*Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496 (E.D.Mich.2000)............. 15

*Maher v. Zapata Corp.*, 714 F.2d 436 (5th Cir. 1983)......................................5

*Malchman v. Davis*, 761 F.2d 893 (2d Cir. 1985)............................................17

*Mangone v. First USA Bank*, 206 F.R.D. 222 (S.D. Ill. Feb. 2, 2001)............10

*Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423 (2d Cir. 2007).......14

*Moulton v. U. S. Steel Corp.,* 581 F.3d 344 (6th Cir. 2009).............................17

*Poertner v. Gillette Co.*, 618 Fed.Appx. 624 (11th Cir. 2015) ........................14

*Ramey v. Cincinnati Enquirer, Inc.,* 508 F.2d 1188 (6th Cir. 1974)..............11

*Rawlings v. Prudential–Bach Props., Inc.,* 9 F.3d 513 (6th Cir.1993)...........12

*Retsky Family Ltd. Partnership v. Price Waterhouse LLP*, No. 97 C
    7694, 2001 WL 1568856 (N.D. Ill. Dec. 10, 2001).......................................8

*Sandusky Wellness Center v. Heel, Inc.*, Case No. 12-CV-1470 (N.D.
    Ohio Apr. 25, 2014)......................................................................................16

*Sandusky Wellness Center, LLC v. Wagner Wellness, Inc.*, Case No.
    12-cv-2257 (N.D. Ohio Feb. 9, 2016) ..........................................................16

*Schlensky v. Dorsey*, 574 F.2d 131 (3d Cir. 1978) ..........................................10

*Siding and Insulation Co. v. Beachwood Hair Clinic, Inc.*, 279 F.R.D.
    442 (N.D. Ohio 2012) ...................................................................................10

*Stanley v. U.S. Steel Co.*, 2009 WL 4646647 (E.D. Mich. Dec. 8, 2009) .... 12,13

*Stanspec Corp. v. Jelco, Inc.*, 464 F.2d 1184 (10th Cir. 1972)..........................7

*Targin Sign Systems, Inc. v. Preferred Chiropractic Ctr., Ltd.*, 679 F.
    Supp. 2d 894 (N.D. Ill. 2010) ......................................................................10

*US Airways, Inc. v. McCutchen*, 133 S.Ct. 1537 (2013) ..................................12

*Walsh v. Great Atlantic & Pacific Tea Co.*, 726 F. 2d 956 (3d Cir. 1983).........5

*Waters v. International Precious Metals Corp.*, 190 F.3d 1291 (11th
    Cir. 1999).......................................................................................................14

*Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026 (9th Cir.
    1997)...............................................................................................................14

## Statutes

Telephone Consumer Protection Act, 47 U.S.C. § 227 ......................................1

## Rules

Fed. R. Civ. P. 23 (c) (2) (B) ...............................................................................6

Fed. R. Civ. P. 23 (c) (3) ...................................................................6

Fed. R. Civ. P. 23 (e) (1) ................................................................. 5

Fed. R. Civ. P. 23 (e) (1) (C) .......................................................... 7

**Treatises**

4 Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS
ACTIONS § 14:6, p. 570 (4th ed. 2002)....................................... 14

7B Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE §
1797.6 (3d ed. 2005)....................................................................... 5

ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS, §
13:80 (4th ed. Updated June 2008) ............................................. 15

C. Krislov, SCRUTINY OF THE BOUNTY: INCENTIVE AWARDS FOR
PLAINTIFFS IN CLASS LITIGATION, 78 Ill. B.J. 286 (June 1990)................... 18

Manual for Complex Litigation, Fourth § 14.121 (2004)................................ 13

Manual for Complex Litigation, Third, § 30.42 (1995)..................................... 7

## STATEMENT OF THE ISSUES

1.  Whether the Settlement Agreement is fair, reasonable, and adequate to the class members.

2.  Whether the Parties' agreed incentive award to Vandenberg & Sons Furniture, Inc. is fair and reasonable.

3.  Whether the Parties' agreement to pay Class Counsel one- third of the Settlement Fund plus expenses is fair, reasonable, and within the market rate for contingent fee, consumer class actions of this sort.

## CONTROLLING AUTHORITY

- Federal Rule of Civil Procedure 23

- *Int'l Union, United Auto, Aerospace and Implement Workers of America v. General Motors Corp.,* 497 F.3d 615 (6th Cir. 2007)

- *Ramey v. Cincinnati Enquirer, Inc.,* 508 F.2d 1188 (6th Cir. 1974)

- *Boeing Co. v. Van Gemert,* 444 U.S. 472 (1980)

- *Blum v. Stenson,* 465 U.S. 886 (1984)

Plaintiff, Vandenberg & Sons Furniture, Inc. ("Plaintiff"), on behalf of itself and the settlement class of similarly-situated persons ("Settlement Class" or "Class"), requests that the Court enter a final order approving the parties' Settlement Agreement ("Settlement" or "Agreement.")

## INTRODUCTION

After notice to all Class members was sent, no Class member has filed an objection and only one (1) Class member has requested to be excluded from the Settlement. Further, notice was sent to the U.S. and state attorney generals for each of the 50 states, and the District of Columbia (*see* Doc. 160) and none of them objected. Because the Settlement is fair, reasonable, and adequate, the Court should grant final approval to it. A copy of the proposed final approval order is attached as Exhibit B.

## I.    Preliminary approval and dissemination of notice.

On December 21, 2021, after consideration of the Settlement Agreement and plan of notice, the Court entered an order preliminarily approving the Settlement and approving the class notice ("Preliminary Approval Order.") (Doc. 167). In accordance with that Order, Plaintiff caused the class notice to be sent on January 4, 2022. Declaration of Dorothy Sue Merryman. Exhibit A.  Out of 6,619 members of the Class, only one chose to be excluded. *Id.*

## II.   Background and summary of settlement.

Plaintiff filed this case alleging that Defendant Alliance Funding Group ("Alliance Funding" or "Defendant") violated the Telephone Consumer Protection Act,

47 U.S.C. § 227 (the "TCPA") and FCC regulations by faxing advertisements to Plaintiff and a class of similarly-situated persons without their prior express invitation or permission.

Based on discovery conducted, it was determined that Defendant's form advertisement was successfully sent to 6,619 persons/fax numbers belonging to persons or entities who were identified in the WestFax opt-out list for Defendant.

Defendant denied liability to Plaintiff and the other Class members on a variety of legal and factual grounds.

Without admitting or conceding fault or liability, Defendant has agreed to settle the claims by making $1,650,000.00 available to fund the Settlement ("Settlement Fund"). The Settlement Fund will be available to pay Class member claims, to pay an incentive award to Plaintiff for serving as the Class Representative, and to pay fees and out-of-pocket litigation expenses to Class Counsel.

Defendant is a business who has had years of operating losses. Defendant's ability to pay is limited by the cash Defendant has on hand.  Plaintiff's review of Defendant's records included a confidential review of Defendant's financial documents in order to confirm Defendant's inability to pay a judgment to the Class if the class were to prevail at either summary judgment or trial.

The Settlement was negotiated among the Parties, through counsel, in good faith, and at arms'-length, including a mediation with the Hon. Sidney I. Schenkier (Ret.). It will resolve this long running suit entirely.

The key terms of the Agreement are as follows:

(1)      a.    <u>Certification of a Settlement Class</u>. On January 22, 2021, the Court certified the following class: "All persons or entities, identified in the WestFax opt-out list for Defendant, who were successfully sent the same or similar fax as Exhibit A to the Complaint from December 3, 2011 to December 3, 2015." (Doc. 130.)  Excluded from the Settlement Class are Defendant, including any of its parents, subsidiaries, affiliates or controlled persons, as well as its officers, directors, agents, servants, and employees, and the immediate family members of such persons.

b.    <u>The Class Representative and Class Counsel</u>. The Court has appointed Plaintiff as the Class Representative and Plaintiff's attorneys (Brian J. Wanca, Ross M. Good, Ryan M. Kelly and Wallace C. Solberg of Anderson + Wanca) as Class Counsel for the Settlement Class. *Id.*

c.    <u>Monetary Relief to the Members of the Settlement Class</u>. Defendant has agreed to make available a total of $1,650,000.00 (the "Settlement Fund") to pay class members, to pay an incentive payment to Plaintiff, and to pay attorney's fees and reasonable out-of-pocket expenses and administrative fees to Class Counsel as approved by the Court. This is an all-in settlement, in other words, no claim forms are required, all persons in the class other than the one (1) exclusion will receive a check. Any money left in the Settlement Fund from checks that are not cashed by the class members, and after payments to the Class Representative, and to Class Counsel shall be

paid as *cy pres* awards to National Consumer Law Center (50%) and Electronic Frontier Foundation (50%), as approved by the Court. (Doc. 166-1 at ¶¶ 6, 10.)

       d.     <u>Class Notice</u>. The parties notified the Settlement Class about the settlement by sending the notice by facsimile to the telephone numbers involved in this case, and by U.S. Mail to class members whose facsimile notice fails after three attempts.  The notice was also available on the Settlement Administrator's website. <u>Exhibit A</u>. The notice included instructions on how to submit any change of address/address verification information to the Settlement Administrator and includes Class Counsel's direct dial telephone number for people to call with questions. *Id.*, Exhibit 1 thereto.

       e.     <u>Claims</u>. No claim form was required. An Address Verification/Change of Address form was  delivered with the Notice, so that members of the Settlement Class could  update as necessary their mailing information with the Settlement Administrator for mailing of settlement checks. Each class member will receive its *pro rata* share of the Settlement Fund after the other payments required by the Agreement are made.

      The class member need not possess the junk fax at issue, need not remember receiving the junk fax at issue, and need not know anything about Defendant. Rather, the class member has already been identified in discovery by Class Counsel as a member of the Settlement class and will automatically be mailed his/her settlement payment.

f.   <u>Release</u>. In consideration of the relief provided by the Settlement, the Settlement Class will release all claims that were brought or could have been brought, as defined in the Agreement, in this action against Defendant and the other released parties about Defendant's advertisements sent by or on behalf of Defendant between December 3, 2011 and December 3, 2015 to the 6,621 persons or entities on the WestFax opt-out list. *Id.*, ¶ 16.  The Class does not release claims regarding any other advertising faxes or those who did not receive class notice.

g.   <u>Incentive Award, Attorneys' Fees and Expenses</u>. Class Counsel requests, and Defendant does not oppose, an award of attorney's fees equal to (a) one-third of the Settlement Fund ($550,000.00), plus reasonable out-of-pocket expenses, not to exceed $79,000.00, including costs of the third-party settlement administrator. Additionally, Defendant does not oppose an award of $15,000.00 to plaintiff, Vandenberg & Sons Furniture, Inc., for serving as the class representative. *Id.*, ¶ 11.

## III.   The Settlement Class was appropriately notified about the settlement.

Rule 23(e)(1) requires, "The court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Under federal law, notice of the settlement must satisfy due process. *Maher v. Zapata Corp.*, 714 F.2d 436, 450-453 (5th Cir. 1983); *Walsh v. Great Atlantic & Pacific Tea Co.*, 726 F.2d 956, 963 (3d Cir. 1983). The Court is vested with wide discretion both as to the manner in which notice is given and the form that notice is to take. 7B Charles Alan Wright et al.,

FEDERAL PRACTICE AND PROCEDURE § 1797.6 (3d ed. 2005). Here, in compliance with the Court's Orders, Plaintiff caused the notice to be sent by facsimile, and if unsuccessful after three (3) attempts, by U.S. Mail (after performing a reverse search on the fax number, and then providing address completion and verification and comparing against the U.S. Postal Service's National Change of Address (NCOA) database) to the Class members that were included in the opt-out fax list compiled by WestFax that was revealed through discovery and were previously successfully sent the Notice of Pendency. Exhibit A.

In this case, notice by fax is the best practicable notice available. Through discovery, Plaintiff was able to obtain the fax numbers of persons and entities who received faxes from Defendant between December 3, 2011 and December 3, 2015 whose fax number was included in the opt-out fax list compiled by WestFax.  The Court was correct in ordering notice by fax. This method of notice comports with the due process obligations under Rule 23 and is the best method of notice available. This allowed for maximum reach to the class members.

Moreover, the content of the parties' Notice complied with Rule 23(c)(2)(B), which requires that the notice "must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the Court will exclude from the class any member who requests exclusion; (vi) the time and manner

for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." The class notice stated all of those things. Exhibit A, Ex. 1.

Further, there is no claim form. A settlement check will be automatically mailed. The notice provided an Address Verification form that a Settlement Class Member merely has to submit if the address shown on the form was incorrect or they have moved. *Id.* The Settlement Class members did not have to provide copies of the subject fax(es) or attest to remembering receiving the subject fax(es).

## ARGUMENT

### I.   The Court should approve the Settlement.

#### A.   Standard for judicial evaluation and approval.

A court should approve a settlement if the settlement "is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(C); *Int'l Union, United Auto, Aerospace and Implement Workers of America v. General Motors Corp.,* 497 F.3d 615, 631 (6th Cir. 2007). It is well-established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions. *See Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation.").

"[A] presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." MANUAL FOR COMPLEX LITIGATION, THIRD, § 30.42 (1995). *See also Stanspec Corp. v. Jelco, Inc.*, 464 F.2d 1184, 1187 (10th Cir. 1972) ("The law actively encourages compromise and settlement of disputes.").

7

### B.    Factors to be considered in determining whether a settlement is fair, reasonable, and adequate.

Courts typically consider the following factors in evaluating a class action settlement: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and the class representatives; (6) the reaction of absent class members; and (7) the public interest." *Brent v. Midland Funding, LLC,* 2011 WL 3862363 at *12 (N.D. Ohio 2011) (*citing Int'l Union,* 497 F.3d at 632). Here, these factors show the settlement should be approved.

### 1.    The risk of fraud or collusion.

"Settlement negotiations that are conducted at arm's length and in good faith demonstrate that a settlement is not the product of collusion." *Retsky Family Ltd. Partnership v. Price Waterhouse LLP*, No. 97 C 7694, 2001 WL 1568856, at *2 (N.D. Ill. Dec. 10, 2001) (Darrah, J.). Here, the settlement record proves that the Settlement is not the product of collusion. The Settlement was reached only after extensive oral and written discovery on both the merits and Defendants' ability to pay. The Settlement was the result of arms-length negotiations between experienced counsel with an understanding of the strengths and weaknesses of their respective positions and a mediation with the Hon. Sidney J. Schenkier (Ret.). Therefore, there is no indication that this Settlement was the product of collusion.

2.      **The complexity, expense and likely duration of the litigation.**

Class actions have a well-deserved reputation for complexity. *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 315 (N.D. Ga. 1993) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). This case is no exception. Defendant has agreed to avoid the risks and costs of further litigation by making the Settlement Fund available to the Class. This Settlement permits the Class to obtain cash payments from the Settlement Fund without the risks and costs of further litigation.

3.      **The amount of discovery.**

The parties engaged in extensive written and oral discovery, including the discovery and mandated depositions of three Alliance Funding representatives/employees, which allowed them to make a fully informed decision in agreeing to the settlement terms. Multiple motions to compel were extensively litigated before Magistrate Judge Kent. Therefore, the stage of proceedings and amount of discovery supports final approval. The Parties have compiled the necessary discovery and exchanged documents and data sufficient for Plaintiff and Class Counsel to evaluate the strength of this case. This case was heavily contested over the six years until this settlement was reached.

4.      **Likelihood of success on the merits.**

To avoid the risk and uncertainty of this litigation, Defendant has agreed to make available a Settlement Fund of $1,650,000.00. (Doc. 166-1, ¶ 6. Every Class member will receive a pro rata share of the Settlement Fund, net of attorneys' fees, litigation expenses, including Class Administration, and incentive award without having to submit a claim form.

9

Due to the risks and expenses involved in litigating this action, reaching this Settlement is a fair, reasonable, and adequate result for the Class. Every class member can recover their pro rata share of the Settlement Fund without having to submit claim form. Therefore, this Settlement is an excellent result when comparing the strength of the case to the settlement amount.

### 5.   Opinion of Class Counsel and Class Representative.

Plaintiff and its counsel have concluded that the terms and conditions of this Settlement are fair, reasonable, adequate, and in the best interests of the Class as a means of resolving this litigation. Class Counsel have substantial experience litigating class actions and claims about unsolicited faxes.  They have been appointed class counsel in dozens of cases. *See, e.g., American Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*, Case No. 09-cv-1162 (W.D. Mich. July 24, 2012), *affirmed by* 757 F.3d 540 (6th Cir. 2014); *Jackson's Five Star Catering, Inc. v. Beason*, Case No. 10-CV-10010 (E.D. Mich.); *Imhoff Inv., Inc. v. Sammichaels, Inc.*, 10-10996, 2012 WL 4815090 (E.D. Mich. Oct. 1, 2012); *Exclusively Cats Veterinary Hospital v. Anesthetic Vaporizer Services, Inc.*, 10-10620, 2010 WL 5439737 (E.D. Mich. Dec. 27, 2010); *Siding and Insulation Co. v. Beachwood Hair Clinic, Inc.*, 279 F.R.D. 442 (N.D. Ohio 2012); *CE Design v. Cy's Crab House North, Inc., et al.*, 259 F.R.D. 135 (N.D. Ill. 2009), *app. denied* (Sept. 9, 2009); *G.M. Sign, Inc. v. Group C. Comm'n, Inc.*, 08 CV 4521, 2010 WL 744262 (N.D. Ill., Feb. 25, 2010); *Hinman v. M & M Rentals*, 545 F. Supp. 2d 802 (N.D. Ill. 2008), *app. denied* (June 17, 2008); *Targin Sign Systems, Inc. v. Preferred Chiropractic Ctr., Ltd.*, 679 F. Supp. 2d 894 (N.D. Ill. 2010).

Under these circumstances, the Court should give weight to Class Counsel's opinions about the settlement.

### 6. The reaction of absent class members.

A low rate of opt-outs or opposition reflect favorably on a settlement. *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1020-21 (N.D. Ill. 2001) (high acceptance rate "is strong circumstantial evidence in favor of the settlements"). Here, the Class members overwhelmingly support the settlement. This is evidenced by the fact that no Class member objected and only one chose to be excluded from the Settlement. Exhibit A. *See Mangone v. First USA Bank*, 206 F.R.D. 222 (S.D. Ill. Feb. 2, 2001) (low opt-out and objection statistic showed that approximately 99.99% of the class elected to take part in the settlement); *Schlensky v. Dorsey*, 574 F.2d 131, 148 (3d Cir. 1978); *In re SmithKline Beecham Corp. Sec. Litig.*, 751 F. Supp. 525, 530 (E.D. Pa. 1990); *Hispanics United of DuPage County v. Village of Addison, Illinois*, 988 F. Supp. 1130, 1169 (N.D. Ill. 1997) (settlement fair where only a small number of class members objected).

### 7. The public interest.

Courts have held that a settlement of class action litigation serves the public interest. *Int'l Union, United Auto., Aerospace, and Agr. Implement Workers of America v. Gen. Motors Corp.,* 497 F.3d 615, 632 (6th Cir. 2007). Based upon the foregoing, as well as upon the judgment of experienced class counsel, Plaintiff requests that the Court approve the proposed Settlement.

II.  **Attorneys' fees and costs from the Settlement Fund are fair, reasonable, and appropriate.**

Under the terms of the Agreement, Class Counsel will be paid one-third of the Settlement Fund ($550,000.00) as attorneys' fees, plus their out-of-pocket litigation expenses, not to exceed $79,000.00, which includes costs of the third-party class administrator. Doc. 166-1, ¶ 11. Defendant takes no position to Plaintiff's requests for these amounts. *Id.*

The attorneys undertook the case on a contingency basis and made a fund of money available to pay the class. It is well recognized that the attorneys' contingent risk is an important factor in determining the fee award. *Ramey v. Cincinnati Enquirer, Inc.,* 508 F.2d 1188, 1196 (6th Cir. 1974). It is well-settled that the attorneys who create a benefit for class members are entitled to compensation for their services. *Brent v. Midland Funding, LLC*, 2011 WL 3862363, at *19 (N.D. Ohio Sept. 1, 2011). The Court should approve this agreement, to which no one objects.

A.  **The Court should approve Defendant's agreement to pay Class Counsel a percentage of the Settlement Fund as attorney's fees.**

It is well settled that the attorneys who create a benefit for class members are entitled to compensation for their services. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The U.S. Supreme Court has noted that in settlement fund cases, such as this one, "a reasonable fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). *See also US Airways, Inc. v. McCutchen*, 133 S.Ct. 1537, 1545 (2013) (discussing *Boeing* rule and describing it as one "designed to prevent freeloading").

"This Court has 'recognized consistently' that someone 'who recovers a common fund for the benefit of persons other than himself' is due 'a reasonable attorney's fee from the fund as whole.'" *McCutchen*, 133 S.Ct. at 1550, *quoting Boeing*, 444 U.S. at 478.

"[T]he Sixth Circuit has observed a 'trend towards adoption of a percentage of the fund method in [common fund] cases.'" *Stanley v. U.S. Steel Co.*, 2009 WL 4646647 at *1 (E.D. Mich. Dec. 8, 2009)(*quoting Rawlings v. Prudential–Bach Props., Inc.*, 9 F.3d 513, 515 (6th Cir. 1993)); *In re Sulzer Orthopedics, Inc.*, 398 F.3d 778, 780 (6th Cir. 2005).  "Particularly, where counsel's efforts create a substantial common fund for the benefit of the class, they are entitled to payment from the fund based on a percentage of that fund." *Id., citing Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 909 (S.D. Ohio 2001); *Basile v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 640 F. Supp. 697 (S.D. Ohio 1986).

"This 'allows a Court to prevent ... inequity by assessing attorneys' fees against the entire fund, thus spreading fees proportionately among those benefitted by the suit.'" *Id., quoting Boeing*, 444 U.S. at 478.  The Sixth Circuit recently clarified that fees are appropriately based on the entire fund made available. *See Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 282-86 (6th Cir. 2016) ("the Supreme Court's position, as well as our own [is] that making claims available to all class members provides them with a benefit") *discussing Boeing*.

"Use of the percentage method also decreases the burden imposed on the Court by eliminating a full-blown, detailed and time consuming lodestar analysis while

assuring that the beneficiaries do not experience undue delay in receiving their share of the settlement." *Stanley*, 2009 WL 4646647 at *1 (*citing In re Activision Sec. Litig.*, 723 F. Supp. 1373 (N.D. Cal. 1989); Manual for Complex Litigation, Fourth § 14.121 (2004)).

In *Boeing*, 444 U.S. 472, 480 (1980), the Supreme Court stated that the right of absentee class members "to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel." "[T]he criteria are satisfied when each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump–sum judgment recovered on his behalf." *Boeing*, 444 U.S. at 479.

The fee award is based upon the entire fund available to be claimed, even if a portion of the fund is not claimed by class members and the unclaimed remainder reverts to the defendant. *See Gascho* at 282-86; *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007) ("The entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class. An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available, whether claimed or not."); *Poertner v. Gillette Co.*, 618 Fed.Appx. 624, 626 (11th Cir. 2015) (same); *Waters v. International Precious Metals Corp.*, 190 F.3d 1291, 1297 (11th Cir. 1999) (same); *Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) (same); *See also* 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 14:6, p. 570 (4th ed.

2002).

Here, the Class members were sent a Class Notice that only required them to submit an address verification if they had a change of address from what was listed on the notice.  No claim form was necessary.  Class members will be automatically mailed a settlement check upon final approval of this Settlement.  Because of the hard work of Plaintiff and Class Counsel through the six years this case has been pending, Class members will receive their share of the Settlement Fund without any need to prove up their claim, possess a copy of the junk fax, or remember receiving any fax from Defendants. Thus, this claims process is on par with (or easier for class members) than the one upheld in *Gascho* at 287-90. The Court should approve Defendant Alliance Funding's agreement to pay Plaintiff's counsel attorney's fees based upon the Settlement Amount of $1,650,000.00.

      **B.**    **The requested fees are within the market rate for this type of case.**

As discussed, the agreement calls for a one-third fee. That percentage falls within the approved range in class actions generally. *See In re Prandin Direct Purchaser Antitrust Litig.,* 2015 WL 1396473 (E.D. Mich. Jan. 20, 2015) (awarding one-third of the fund); *Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496, 503 (E.D.Mich.2000) (approving fees of 33% of the settlement fund); *Johnson v. Midwest Logistics Systems, Ltd.*, No. 11-cv-1061, 2013 WL 2295880 (S.D. Ohio May 24, 2013) (same); *In re Telectronics Pacing Sys.*, 137 F. Supp. 2d 985, 1046 (S.D. Ohio 2001) ("the range of reasonableness has been designated as between twenty to fifty percent of the common fund"); *In re S. Ohio Corr. Facility*, 173 F.R.D. 205, 217 (S.D. Ohio

1997), *rev'd on other grounds*, 24 Fed. App'x 520 (6th Cir.2001) ("[t]ypically, the percentage awarded ranges from 20 to 50 percent of the common fund"); *In re Cincinnati Gas & Elec.*, 643 F. Supp. 148, 150 (S.D. Ohio 1986); *In re Cincinnati Microwave*, No. C–1–95–905 (30% plus expenses); *Howes v. Atkins*, 668 F. Supp. 1021 (E.D.Ky.1987) (40%); *Adams v. Standard Knitting Mills, Inc.*, [1978 Transfer Binder] Fed. Sec. L. Rep. (CCH) P 96,377, 1978 U.S. Dist. LEXIS 20317 (E.D. Tenn. Jan. 6, 1978) (35.8%); *Bennett v. Roark Capital Group, Inc.*, Case No. 2:09-cv-00421, 2011 WL 1703447 at *2 (D. Maine, 2011) (33% of fund "reflects a fee that is customary."). *See also* ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS, § 13:80 (4th ed. Updated June 2008). "When a class suit produces a fund for the class, it is commonplace to award the lawyers for the class a percentage of the fund." *Gaskill v. Gordon*, 160 F.3d at 363 (7th Cir. 1998) (affirming award of 38% of $20 million).

Moreover, that percentage falls within the market rate of TCPA cases. *See Avio Inc. v. Creative Office Solutions, Inc.*, 10-cv-10622 (E.D. Mich. Dec. 10, 2012) (Roberts, J.) (Doc. 31) (awarding one third of fund); *Imhoff Investment, LLC v. Sammichaels, Inc.*, Case No. 10-cv-10996 (E.D. Mich. Nov. 2, 2016) (Battani, J.) (Doc. 120) (same); *Jackson's Five Star Catering, Inc. v. Beason*, Case No. 10-cv-10010 (E.D. Mich. Apr. 5, 2015) (Tarnow, J.) (same); *American Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*, Case No. 09-cv-1162 (W.D. Mich. Mar. 1, 2016) (Doc. 278) (same); *Sandusky Wellness Center, LLC v. Wagner Wellness, Inc.*, Case No. 12-cv-2257 (N.D. Ohio Feb. 9, 2016) (Doc. 73) (same); *Sandusky Wellness Center v. Heel, Inc.*, Case No. 12-CV-1470 (N.D. Ohio Apr. 25, 2014) (Doc. 95) (same).

Here, the Class Notice informed the Settlement Class about the attorneys' fees and no Class member objected. Courts have recognized the lack of objections from members of the class as an important factor in awarding fees. *See, e.g., In re Automotive Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2008 WL 63269, *4 (E.D. Pa. Jan. 3, 2008) ("A lack of objections demonstrate that the Class views the settlement as a success and finds the request for counsel fees to be reasonable.").

In *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983), the U.S. Supreme Court held that negotiated, agreed-upon attorneys' fee provisions, such as the one here, are the "ideal" towards which the parties should strive: "A request for attorneys' fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." In *Malchman v. Davis*, 761 F.2d 893 (2d Cir. 1985), the court concluded that courts should not interfere in fee arrangements between settling class action parties when the defendant has agreed to pay the fees:

> [W]here . . . the amount of the fees is important to the party paying them, as well as the attorney recipient, its seems to the author of this opinion that an agreement 'not to oppose' an application for fees up to a point is essential to completion of the settlement, because the Defendant want to know their total maximum exposure and the plaintiffs do not want to be sandbagged. It is difficult to see how this could be left entirely to the courts for determination after the settlement. [761 F.2d at 905 n. 5].

In sum, Class counsel undertook this case on a contingency basis. Class Counsel have been litigating TCPA class actions since 2003. In this case, they were able to apply their unique experience to achieve an excellent result in a fair and efficient manner. They always faced risk of nonpayment, not only for their time, but also for their out-of-pocket costs. The Court should approve the agreement to pay

them attorneys' fees of $550,000.00, plus reasonable out-of-pocket expenses (including the cost of administration) in the amount of $78,212.35 because that amount is within the market rate for this type of case and it is otherwise fair and reasonable under the circumstances.

### III. The Court should approve the agreed incentive payment to Plaintiff.

Additionally, the Court should approve the Parties' agreement that Plaintiff will receive $15,000.00 from the Settlement Fund as an incentive award for serving as the Class Representative. Such awards are appropriate to reward class representatives who have pursued claims on behalf of the class. *Moulton v. U. S. Steel Corp.,* 581 F.3d 344, 351-52 (6th Cir. 2009).

Courts routinely award such "incentive payments" to the persons who assume the special litigation burden of class representative and thereby benefit the entire class. *In re Dun & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366, 367 (S.D. Ohio 1990) (approving two incentive awards of $55,000 and three of $35,000 to five representatives). In *In re Lupron*, the court noted that incentive awards serve an important function:

> Incentive awards serve an important function in promoting class action settlements, particularly where, as here, the named plaintiffs participated actively in the litigation. *Denny v. Jenkins & Gilchrist*, 2005 WL 388562, at *31 (S.D.N.Y. Feb. 18, 2005). Courts 'routinely approve incentive awards to compensate named plaintiffs for the service they provided and the risks they incurred during the course of the class action litigation.' *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 400 (D.D.C. 2000). 'Because a named plaintiff is an essential ingredient of any class action, an incentive award can be appropriate to encourage or induce an individual to participate in the suit.' *In re Compact Disc*, 292 F. Supp. 2d at 189. [*In re Lupron Mktg. and Sales*

*Practice Litig.*, No. 01-CV-10861-RGS, 2005 WL 2006833, at *7 (D. Mass. Aug. 17, 2005)]

Class action suits conserve judicial and litigant resources. *GMAC Mtge. Corp. v. Stapleton*, 236 Ill. App. 3d 486, 497 (1st Dist. 1992) (*citing* C. Krislov, SCRUTINY OF THE BOUNTY: INCENTIVE AWARDS FOR PLAINTIFFS IN CLASS LITIGATION, 78 Ill. B.J. 286 (June 1990)). Class representatives assume the burdens of litigation that absent class members do not shoulder and do so without promise of a reward and with the risk that the litigation may not succeed. The Class Representative in this case was no exception. But for Plaintiff's initiative and participation, the benefits available to the Class members would not have been realized. The Court should approve the parties' agreement regarding Plaintiff's incentive payment, and award the requested amount.

## CONCLUSION

The Court should approve the Settlement as fair, reasonable, and adequate and in the best interests of the settling parties and the Class and enter the proposed Final Approval Order attached as Exhibit B.

Respectfully submitted,

VANDENBERG & SONS FURNITURE, INC., individually and as the representative of a class of similarly situated persons,

/s/ Ross M. Good
Ross M. Good
Brian J. Wanca
Ryan M. Kelly
Wallace c Solberg

ANDERSON + WANCA
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
Telephone: (847) 368-1500
Facsimile: (847) 368-1501

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that, on April 13, 2022, he caused the foregoing to be filed using the Court's CM/ECF system, which automatically serves a copy on all counsel of record.

/s/ Ross M. Good